UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY ANN KELLER,

                    Plaintiff,

v.                                              5:15-CV-0309
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

MEGGESTO, CROSSETT & VALERINO, LLP              KIMBERLY SLIMBAUGH, ESQ.
  Counsel for Plaintiff
313 East Willow St., Ste. 201
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                     SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

    This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 18.)  This case has proceeded in accordance with General

Order 18.

    Currently before the Court, in this Social Security action filed by Mary Ann Keller

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 15, 17.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 22, 1958. (T. 48.) She completed high school and one year of college. (T. 138.) Generally, Plaintiff's alleged disability consists of herniated disc in the cervical spine, cervical spondylosis, cervical stenosis, spinal stenosis in the lumbar spine, diabetes, carpal tunnel syndrome, and degenerative disc disease. (T. 137.) Her alleged disability onset date is October 29, 2011. (T. 48.) Her date last insured is December 31, 2016. (*Id.*) She previously worked in customer service. (T. 139.)

### B. Procedural History

On March 27, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 48.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 24, 2013, Plaintiff appeared before the ALJ, Barry E. Ryan. (T. 21-47.) On June 6, 2013, ALJ Ryan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 6-20.) On January 20, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 11-17.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since October 29, 2011. (T. 11.) Second, the ALJ found that Plaintiff had the severe impairments of lumbar spine degenerative disc disease and cervical spine degenerative disc disease. (*Id.*) The ALJ determined that Plaintiff's diabetes, status post-right carpal tunnel release, left carpal tunnel syndrome, and obesity were non-severe impairments. (T. 12.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for three hours each in an eight-hour workday. (T. 12.)[1] Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a customer service clerk. (T. 15.) The ALJ further determined that there were a significant number of jobs in the national economy Plaintiff could perform. (T. 15-16.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1] The ALJ's RFC determination combines exertional aspects of light and sedentary work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.* at § 404.1567(a).

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in his step two determination. (Dkt. No. 15 at 8-10 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's RFC for light work was not supported by the evidence in the record. (*Id.* at 10-12.) Third, Plaintiff argues the ALJ erred as a matter of law in rejecting Plaintiff's testimony regarding the disabling effects of her impairments. (*Id.* at 12-15.) Fourth, Plaintiff argues the ALJ failed to follow the treating physician rule. (*Id.* at 15-17.) Fifth, and lastly, Plaintiff argues the ALJ failed to develop the record. (*Id.* at 17-18.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly assessed Plaintiff's impairments at step two. (Dkt. No. 17 at 5-11 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly assessed Plaintiff's RFC. (*Id.* at 11-17.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.   The ALJ's Step Two Analysis and Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff had a severe impairment that significantly limited her physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  Plaintiff bears the burden of presenting evidence establishing severity.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).  Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").  It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler*

*v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Plaintiff argues the ALJ erred in his step two determination that Plaintiff's carpal tunnel syndrome and diabetes were non-severe impairments. (Dkt. No. 15 at 8-10 [Pl.'s Mem. of Law].) Here, the ALJ properly assessed Plaintiff's impairments at step two and concluded that these impairments did not impose limitations on Plaintiff's ability to perform basic work activities. Further, any error at step two would be harmless because the ALJ assessed all of Plaintiff's impairments in his RFC discussion and analysis.

Although Plaintiff is correct in her assertion that objective medical imaging established Plaintiff's diagnosis of carpal tunnel syndrome (Dkt. No. 15 at 8 [Pl.'s Mem. of Law]), a diagnosis of an impairment is not enough to classify an impairment as severe. The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y. 2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)). Plaintiff's EMG indicated "mild carpal tunnel syndrome" with "no evidence of a peripheral neuropathy or peripheral nerve entrapment" and "no evidence of a cervical radiculopathy." (T. 205.)

At step two the ALJ concluded that no medically acceptable source opined Plaintiff had a significant limitation due to her carpal tunnel. (T. 12.) Plaintiff argues that substantial evidence in the record supports limitations. (Dkt. No. 15 at 8 [Pl.'s Mem. of Law].) First, the question is not whether substantial evidence supports Plaintiff's position, but whether substantial evidence supports the ALJ's determination. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski*

*v. Colvin,* 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Second, although the medical record contained notations of subjective complaints of numbness and tingling, and observations of decreased motor strength, medical sources opined that Plaintiff did not have functional manipulative limitations that would impact basic work activity.[2] For example, consultative examiner, Robi Rosenfeld, D.O., observed that Plaintiff had decreased grip strength; however, Dr. Rosenfeld did not impose any limitations in handling or fingering in her medical source statement. (T. 212-213.) Non-examining State agency medical consultant, Arvind Chopra, M.D., opined that despite decreased grip strength Plaintiff had no manipulative limitations. (T. 222) (adopting the RFC at T. 54 indicating Plaintiff had no manipulative limitations). Treating source, Stephen Robinson, M.D., opined Plaintiff was limited to "occasional"

---

[2]    See 20 C.F.R. § 404.1521:

(a) *Non-severe impairment(s).* An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

fingering and feeling with her left hand.  (T. 251.)[3]  Here, substantial evidence, the opinions of Drs. Rosenfeld and Chopra, support the ALJ's step two determination.

Substantial evidence also supported the ALJ's determination that Plaintiff's diabetes was a non-severe impairment.  (T. 12.)  Plaintiff fails to provide evidence in the record establishing that her diabetes imposed work related functions.  (Dkt. No. 15 at 10 [Pl.'s Mem. of Law].)  Plaintiff argues her diabetes complicated her symptoms and treatment options; however, this is not the standard for determining whether or not an impairment is severe.

Here, any error the ALJ may have made in his step two determination was harmless.  First, the ALJ determined that Plaintiff did suffer from severe impairments and continued with the sequential process.  Second, contrary to Plaintiff's argument, the ALJ did consider Plaintiff's carpal tunnel syndrome in the remainder of his decision. (Dkt. No. 15 at 9 [Pl.'s Mem. of Law].)  At step four, the ALJ specifically discussed Plaintiff's complaints of "weakness and numbness in her left arm," EMG test results, physical examination which indicated "normal strength and reflexes in the upper and lower extremities with the ability to zip and button," and opinion evidence in the record. (T. 13-14.)  Therefore, it is recommended that the ALJ's step-two determination be upheld because the ALJ properly assessed Plaintiff's impairments at step-two and any error would have been harmless.

Plaintiff argues that the ALJ failed to develop the record with regard to Plaintiff's diabetes.  (Dkt. No. 15 at 17-18 [Pl.'s Mem. of Law].)  To be sure, the ALJ was under an affirmative duty to "make every reasonable effort" to develop the record.  20 C.F.R. §

---

[3]     Occasional was defined as "occurring from very little to one-third of an 8-hour workday." (T. 251.)

404.1512(d).  However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete and there is no indication that further contact will result in additional information, re-contact is not necessary.  *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

Plaintiff appears to argue the ALJ should have contacted Plaintiff's primary care provider for additional records pertaining to Plaintiff's diabetes.  (Dkt. No. 15 at 17-18 [Pl.'s Mem. of Law].)[4]  The ALJ did not fail to develop the record because the record was complete and there was no indication re-contacting a source would yield more information.

The record here was complete because it contained multiple treatment notations from Plaintiff's specialists, a medical source statement from a specialist, and examinations and statements from State agency consultants.  In addition, Plaintiff's representative stated at the hearing that he reviewed the exhibit file and had no objections, he did not indicate that he had additional records to submit nor did he request assistance in obtaining additional records.  (T. 23-24.)  The record indicated that the Social Security Administration contacted Plaintiff's primary care physician, Dr. Mark McConn on two occasions, but did not receive a response.  (T. 214.)  Therefore, the ALJ did not fail to develop the record.

### B.    The ALJ's RFC Determination and Weight to the Medical Evidence in the Record

---

[4]    Plaintiff asserts that there was an "obvious gap" in the record because specialists indicated Plaintiff's diabetes prevented certain treatments; however, Plaintiff fails to indicate specifically from whom the ALJ should have requested documentation.  (Dkt. No. 15 at 17 [Pl.'s Mem. of Law].)

An RFC is the most Plaintiff can still do despite her limitations.  20 C.F.R. §
404.1525(a)(1).  In formulating an RFC, the ALJ will base his determination on all the
relevant evidence in Plaintiff's case record.  *Id*.

Essentially, Plaintiff argues the ALJ erred in his RFC determination because he
(1) afforded more weight to the vague opinion of a consultative examiner over that of
Plaintiff's treating specialist and (2) because he misinterpreted the opinion of the non-
examining State agency medical consultant.  (Dkt. No. 15 at 11-12, 15-17 [Pl.'s Mem. of
Law].)

In evaluating opinion evidence, the opinion of a treating source will be given
controlling weight if it "is well supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other substantial evidence in [the]
case record."  20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir.
2015) ("It is well established that a treating physician's opinion as to the nature and
severity of an impairment is given controlling weight.").

The following factors must be considered by the ALJ when deciding how much
weight the opinion should receive, even if the treating source is not given controlling
weight: "(i) the frequency of examination and the length, nature, and extent of the
treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's
consistency with the record as a whole; and (iv) whether the opinion is from a
specialist."  20 C.F.R. § 404.1527(c)(2)(i)-(iv).  The ALJ is required to set forth his
reasons for the weight he assigns to the treating physician's opinion.  *Id.*, *see also* SSR
96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.
2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

In a medical source statement dated May 21, 2012, consultative examiner, Dr. Rosenfeld opined that Plaintiff had "moderate restriction for squatting and kneeling and moderate restriction for heavy lifting and carrying because of the lumbar and cervical disk disease." (T. 213.)[5]  In making her determination Dr. Rosenfeld relied on her one time examination of Plaintiff.  Dr. Rosenfeld observed that Plaintiff was in no acute distress, her gait was normal, she could walk on heels and toes without difficulty, her squat was reduced to 50% due to pain, her stance was normal, she used no assistive devices, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty.  (T. 211.)

Dr. Rosenfeld performed a physical examination including a musculoskeletal examination.  She observed a reduced range of motion in Plaintiff's cervical spine, no abnormalities in Plaintiff's thoracic spine, and reduced range of motion in Plaintiff's lumbar spine.  (T. 212.)  She noted Plaintiff complained of pain in her right lower back when she raised her leg from a supine position.  (*Id.*)  Dr. Rosenfeld noted Plaintiff had full range of motion in her shoulders, elbows, forearms, and wrists.  (*Id.*)  She observed full range of motion in Plaintiff's hips, knees, and ankles.  (*Id.*)  Dr. Rosenfeld noted Plaintiff had reduced grip strength in her left hand (4/5) and full grip strength in her right hand (5/5).  (*Id.*)  She noted Plaintiff was able to zip and button.  (*Id.*)  Dr. Rosenfeld listed Plaintiff's diagnosis as cervical disk disease, lumbar disk disease, diabetes mellitus, and obesity.  (T. 213.)

---

[5]        Dr. Rosenfeld does not define "heavy lifting."  (T. 213.)  The Regulations define "heavy work" as "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. § 404.1567(d).

The ALJ afforded Dr. Rosenfeld's opinion "great weight." (T. 14.) The ALJ reasoned the opinion was consistent with the objective medical evidence in the record such as MRI and EMG findings. (*Id.*) Further, the ALJ reasoned the opinion was consistent with the longitudinal record of care. (*Id.*)

Plaintiff's treating orthopedic surgeon, Dr. Robinson, completed a medical source statement dated August 6, 2012. (T. 249-253.) Dr. Robinson provided specific exertional limitations for Plaintiff. Dr. Robinson opined Plaintiff could frequently and occasionally lift and/or carry less than ten pounds. (T. 249-250.) He opined Plaintiff could stand and/or walk less than two hours in an eight hour workday. (T. 250.) He opined Plaintiff could sit for "less than about" six hours in an eight hour workday. (*Id.*) Dr. Robinson opined Plaintiff's ability to push and pull was limited in the upper extremities. (*Id.*) Dr. Robinson stated the limitations were based on Plaintiff's chronic neck and left arm pain. (*Id.*)

Dr. Robinson provided the following non-exertional limitations. Dr. Robinson opined Plaintiff could occasionally climb stairs. (T. 251.) He opined Plaintiff could never: balance, kneel, crouch, crawl, or stoop. (*Id.*) Again, Dr. Robinson stated the limitations were based on Plaintiff's chronic neck and left arm pain. (*Id.*) He opined Plaintiff could occasionally reach, handle, finger and feel. (*Id.*)[6] Dr. Robinson stated Plaintiff's manipulative limitations were due to her chronic neck and left arm pain. (T. 252.) Dr. Robinson provided environmental limitations and indicated Plaintiff should "avoid:" extreme temperature, vibration, humidity/wetness, and hazards. (*Id.*) Dr.

_____

[6] Dr. Robinson's notation appear to indicate that Plaintiff was limited to occasionally fingering and feeling with her left hand. (T. 251.)

Robinson noted that Plaintiff's limitations first became present in October of 2011. (T. 253.)

The ALJ afforded Dr. Robinson's opinion "limited weight." (T. 14.) The ALJ reasoned the opinion was not supported by, and inconsistent with, the "relatively mild objective findings" of the MRI and EMG tests; the opinion was unsupported and inconsistent with the observations made by other examining physicians; and Dr. Robinson "apparently relied quite heavily on [Plaintiff's] subjective report[s]." (*Id.*)

There are multiple aspects to Plaintiff's argument that the ALJ erred in his RFC determination. Here, Plaintiff does not argue that the ALJ failed to follow the factors outlined in 20 C.F.R. § 404.1527(c)(2) in evaluating Dr. Robinson's opinion, nor does Plaintiff argue the ALJ should have afforded Dr. Robinson's opinion controlling weight, or even more weight, based on the evidence in the record. Instead, Plaintiff argues the ALJ committed legal error in affording the vague opinion of Dr. Rosenfeld, a consultative examiner, more weight than the opinion of Dr. Robinson, a treating source. (Dkt. No. 15 at 15-16 [Pl.'s Mem. of Law].)

Affording more weight to a consultative examiner's opinion over the opinion of a treating source is not cause for automatic remand. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), and 404.1527(e). The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims" whose "opinions may constitute substantial evidence in support of residual

functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015) (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions")); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013)(consultative examiner's opinion was "remarkably vague" and meaning was left to the ALJ's "sheer speculation"); *see Carrube v. Astrue,* No. 3:08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (remanding where consultative examiner's opinion on claimant's ability to lift weight, was so vague that the court "cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry twenty-five to fifty pounds"), *report and recommendation adopted by,* 2010 WL 2178499 (N.D.N.Y. May 28, 2010). Additionally, the "use of imprecise and nebulous terms regarding functional limitations raises a red flag." *Anderson v. Colvin*, No. 5:12-CV-1008, 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013).

Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in

all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se*. Reviewing courts must weigh the impart of vague opinion in its unique factual circumstance."). Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment); *see Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-0428, 2016 WL 2347910, at *5 (N.D.N.Y. May 4, 2016) (holding that a consultative examiner's opinion was too vague to support a finding that plaintiff could perform sedentary work because the ALJ determined, at step two, that plaintiff suffered from back disorders, knee disorders, and Factor V Leiden; and therefore, plaintiff did not have relatively little physical impairments).

Further, courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination." *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8

(S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff).

Therefore, although a consultative examiner's opinion may contain vague terminology, such language does not render the opinion useless. Such vague verbiage may constitute substantial evidence if the plaintiff has a relatively little impairment or if the verbiage is elucidated in the context of the opinion and other medical evidence in the record.

Here, although Dr. Rosenfeld's opinion contained vague verbiage, the context of the underlying opinion, as outlined above, and other medical evidence in the record provided a framework which solidified the meaning of the opinion. Therefore the ALJ did not err in relying on the opinion of Dr. Rosenfeld in formulating his RFC determination.

In affording Dr. Rosenfeld's opinion "great weight" the ALJ reasoned that the opinion was consistent with objective medical evidence in the record, specifically MRI and EMG findings. (T. 14.) The ALJ further relied on the opinion of the non-examining Stage agency consultant, Arvind Chopra, M.D. (T. 14.) Dr. Chopra reviewed the medical evidence in the file, including the MRI and EMG results, treatment notations from Dr. Robinson dated March 2012 and April 2012, and the May 2012 examination by Dr. Rosenfeld. (T. 222.) Dr. Chopra opined Plaintiff was capable of lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting about six hours in an eight

hours workday; standing/walking three hours in an eight hour workday; and could occasionally stoop, kneel, crouch and crawl. (*Id.*)[7] Therefore, Dr. Chopra's specific functional limitations were based, in part, on the medical source statement of Dr. Rosenfeld thus giving Dr. Rosenfeld's opinion adequate meaning.

Plaintiff argues the ALJ erred in relying on the opinion of Dr. Chopra because "the opinion was well before the majority of the treatment notes come into the record." (Dkt. No. 15 at 16 [Pl.'s Mem. of Law].) Contrary to Plaintiff's argument, Dr. Chopra reviewed a significant portion of the medical evidence in the record. Dr. Chopra reviewed the objective medical imaging and testing, and Dr. Robinson's treatment notations. (T. 222.) Dr. Chopra also reviewed Dr. Rosenfeld's examination and findings. (*Id.*) Dr. Chopra did not review records provided by New York Spine and Wellness Center; however, a review of those records does not indicate that their examination findings would have changed the ALJ's ultimate determination. Therefore, the ALJ did not err in relying on the opinion of Dr. Chopra in making his RFC determination.

Plaintiff argues the ALJ erred in concluding that Plaintiff retained the RFC to perform "light work" because he misread the opinion of Dr. Chopra. (Dkt. No. 15 at 11 [Pl.'s Mem. of Law].) Dr. Chopra stated Plaintiff could "stand/walk=3 hours/8 hour workday." (T. 222.) The ALJ ultimately concluded Plaintiff could sit for six hours in an eight hour workday, and stand and walk for three hours "each" in an eight hour workday. (T. 12.)

---

[7]    Dr. Chopra adopted the RFC determination of the single decision maker; however, Dr. Chopra opined Plaintiff was limited to standing/walking three hours in an eight hour workday whereas the single decision maker opined Plaintiff could stand/walk for six hours in an eight hour workday. (T. 52-56.)

Plaintiff essentially argues that "light work" requires the ability to stand and walk off and on for approximately six hours in an eight hour work day and therefore, the ALJ's RFC determination is faulty because Plaintiff cannot stand and walk for six hours in an eight hour workday. (Dkt. No. 15 at 11-12 [Pl.'s Mem. of Law].) However, as Defendant argues, any error would not warrant remand because the ALJ determined at step four that Plaintiff retained the ability to perform her past relevant sedentary work. (Dkt. No. 17 at 11 [Def.'s Mem. of Law].)

To be sure, light work requires standing and walking for approximately six hours in and eight hour workday. SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6. Further, there does appear to be a conflict between Dr. Chopra's conclusion that Plaintiff could stand/walk for three hours and the ALJ's ultimate RFC determination. However, Plaintiff appears to lose sight of the ALJ's overall RFC determination. The ALJ did not ultimately conclude Plaintiff could perform a full range of light work as defined in the Regulations. The ALJ determined Plaintiff could perform the lifting and carrying requirements of light work; however, the ALJ also concluded Plaintiff's ability to walk/stand was limited and Plaintiff had the ability to sit for six hours in a workday. (T. 12.) At step four the ALJ concluded Plaintiff retained the ability to perform her past relevant work which was classified as a sedentary position. (T. 15.) Therefore, any error the ALJ may have made was harmless, because Plaintiff could still perform her past relevant sedentary work because the ALJ determined that she was capable of sitting for six hours in an eight hour workday.

In sum, the ALJ did not err in relying on the medical opinion evidence of the consultative examiner, Dr. Rosenfeld and the non-examining state agency consultant,

Dr. Chopra, in making his RFC determination.  Dr. Rosenfeld's opinion was not impermissible vague when read in the context of the record and other medical opinion evidence.  Any error the ALJ may have made in his RFC determination regarding Plaintiff's ability to stand and walk was harmless because his step four determination, that Plaintiff retained the ability to perform her past relevant sedentary position, would have remained the same.  Therefore, for the reasons stated herein and further outlined in Defendant's brief, it is recommended that the ALJ's RFC determination be upheld.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate Plaintiff's reported symptoms.  *See* 20 C.F.R. § 404.1529; SSR 96–7p.  First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the

existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit Plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment Plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that Plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, the statements concerning the intensity, persistence, and limiting effects of those symptoms was not credible because they were "unsupported by medical and other evidence, competent medical opinion, and testimony." (T. 13.)

Plaintiff argues the ALJ erred in his credibility assessment  because he mischaracterized Plaintiff's activities of daily living, ignored Plaintiff's testimony, and Plaintiff's testimony was supported by medical records including the consultative examination. (Dkt. No. 15 12-15 [Pl.'s Mem. of Law].)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in

the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault,* 683 F.3d at 448; *see also Wojciechowski,* 967 F. Supp. 2d at 605 (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff argues that the ALJ mischaracterized her testimony and Plaintiff cites to testimony in the record in support of her argument; however, as stated herein, it is not enough for Plaintiff to disagree with the ALJ's weighing of the evidence.

It is the function of the ALJ, not the reviewing courts to appraise the credibility of witnesses, including Plaintiff. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). A thorough review of the record and the ALJ's decision fails to support Plaintiff's contention that the ALJ mischaracterized Plaintiff's testimony. The ALJ's credibility determination utilized the proper factors outlined in the Regulations and his determination was supported by substantial evidence. Therefore, the ALJ did not err in his credibility assessment because Plaintiff has failed to show that no reasonable factfinder could have reached the ALJ's determination. Therefore, it is recommended that the ALJ's credibility determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:      June 10, 2016

William B. Mitchell Carter
U.S. Magistrate Judge